UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kyle Root,

      Plaintiff,

      v.                                       Civil Action No. 1:12-CV-70

Andrew Pallito, Commissioner,
Vermont Department of Corrections,

      Defendant.

# REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff Kyle Root, a Vermont prison inmate, commenced this action *pro se* pursuant to 42 U.S.C. § 1983, against Andrew Pallito, the Commissioner of the Vermont Department of Corrections ("DOC"). In his Complaint, Plaintiff claims that a correctional facility officer violated his Eighth Amendment right to be free from cruel and unusual punishment by punching and verbally abusing him.

Defendant moves to dismiss on the basis that the Court lacks subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and that Plaintiff fails to state a claim for which relief can be granted, Fed. R. Civ. P. 12(b)(6). (Doc. 9.) Plaintiff has not filed an opposition to this motion. For the reasons set forth below, I recommend that the motion to dismiss be GRANTED with leave to amend being granted to Plaintiff.

**Factual Background**

For the purposes of the motion to dismiss, the Court will accept all facts as alleged in Plaintiff's Complaint as true and draw all inferences therefrom in Plaintiff's favor. *Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir. 2003) (citing *Wynn v. Southward*, 251 F.3d 588, 591-92 (7th Cir. 2001)). This action arises out of an incident that occurred on or about September or October 2011 while Plaintiff was incarcerated at the Northeast Correctional Complex ("NERFC"). (Doc. 5 at 3.) During this time, Plaintiff participated in work crew at the Caledonia Community Work Camp in St. Johnsbury, Vermont. (*Id.*) On the morning of the incident, Plaintiff went to the booking area to fill out a required form. (*Id.*) Plaintiff decided to request additional forms for other members of the work crew who were still getting dressed. (*Id.*) A correctional officer, identified in Plaintiff's Complaint as "Officer Kerr," told Root he could take "only one form." (*Id.*) When Root tried to explain why he wanted to take extra forms, Officer Kerr allegedly grabbed several of the forms, "clenched his fist and slammed his fist into [Root's] chest." (*Id.* at 3-4.) Officer Kerr then told him to "[t]ake them all you fucking punk." (*Id.* at 4.)

Root contends these actions "caused [him] much pain and embarrasment, [sic]," made him feel "totally belittled," and constituted a violation of his constitutional rights under the Eighth Amendment. (*Id.*) For relief, he seeks damages in the amount of $5,000,000.00 and immediate release from incarceration. (*Id.* at 5.)

Defendant argues Plaintiff's claims should be dismissed on several grounds, including: (1) that Root's claim against Defendant in his official capacity is barred by the Eleventh Amendment; (2) that Root unsuccessfully exhausted all available administrative

remedies; (3) that Root failed to allege sufficient personal involvement by Defendant; and (4) that Root did not state a valid constitutional claim. (Doc. 9 at 3.)

## Discussion

I. **Legal Standard**

Defendant moves to dismiss this Complaint for failure to state a claim for which relief can be granted. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the plaintiff must plead enough factual information to "raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court will not consider "[t]hreadbare recitals" of the essential elements of a claim "supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A legal claim is sufficiently plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556.

Because Plaintiff appears *pro se,* his pleadings are viewed with "special solicitude," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006), and all allegations set forth in his Complaint are liberally construed "to raise the strongest arguments they suggest," *Ruotolo v. Internal Revenue Serv*. 28 F.3d 6, 8-9 (2d Cir. 1994). "However, the leniency accorded *pro se* litigants is not without limits and all normal rules of pleading are not absolutely suspended." *Gil v. Vogliano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001) (citations omitted). Furthermore, although the time for Plaintiff to oppose this motion has expired, *see* L.R. 7(a)(3)(A), the Court will not summarily dismiss this action for this reason alone. *See McCall v. Pataki*, 232 F.3d 321,

322-23 (2d Cir. 2000) ("the sufficiency of a complaint is a matter of law that the court is capable of determining based upon its own reading of the pleading and knowledge of the law").

## II. Eleventh Amendment Immunity

Defendant first argues that the Eleventh Amendment grants him immunity from actions he took in his official capacity as Commissioner of the Vermont DOC. State officials acting in their official capacity, as agents of the state, are generally immune from suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-98 (1984). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Unless the state waives its immunity by "unequivocally express[ing]" consent to proceed with the lawsuit, *Pennhurst*, 465 U.S. at 99, or Congress abrogates such immunity by exercising its authority pursuant to § 5 of the Fourteenth Amendment, such suits are barred by the Eleventh Amendment. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 (1996); *see also Quern v. Jordan*, 440 U.S. 332, 342 (1978) (holding 42 U.S.C. § 1983 does not abrogate States' Eleventh Amendment immunity).

The State of Vermont has not waived its sovereign immunity through consent, nor has Congress abrogated this immunity against claims such as that presented here. In fact, the State of Vermont has expressly retained its Eleventh Amendment immunity. *See* 12

4

V.S.A. § 5601(g). Therefore, the motion to dismiss Root's claim for monetary damages[1] against Defendant in his official capacity should be GRANTED.

III. **Exhaustion of Administrative Remedies**

Defendant next moves to dismiss Root's claims on grounds that Root failed to properly exhaust all available administrative remedies prior to commencing this action. In support of this argument, Defendant explains that, although Root began the grievance process at the DOC after the alleged misconduct transpired, he initiated the instant suit prior to receiving any response from the DOC.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534, U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, the Court must examine the administrative rules governing the facility's grievance procedure and determine whether the inmate complied with them. *Espinal v.*

---

[1] Eleventh Amendment immunity is not applicable to Plaintiff's request for prospective injunctive relief. *See Edelman*, 415 U.S. at 664-65; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985).

*Goord*, 558 F.3d 119, 124 (2d Cir. 2009); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007).

The Vermont DOC has a comprehensive grievance process for inmates seeking redress from conflicts occurring in prison. This procedure includes multiple levels of administrative review, outlined as follows:

> inmates[s] [ ] first lodge an informal complaint, either orally or in writing. If the situation is not resolved to the inmate's satisfaction within 48 hours, he may begin the formal grievance process. That process requires a DOC staff member to investigate and recommend a resolution to a supervisor. If the supervisor agrees, the resolution is reported to the inmate, who may then appeal to the facility superintendent if still not satisfied.

*LaBombard v. Burroughs-Biron*, No., 2:09-CV-136, 2010 WL 2264973, at *3 (D. Vt. Apr. 30, 2010) (Conroy, Mag. J.) (citation omitted), *adopted and approved*, 2010 WL 2265004 (D. Vt. June 1, 2010). In a similar fashion the inmate can appeal a decision of the facility superintendent to a Corrections Executive and, finally, a decision of the Corrections Executive can be appealed to the Commissioner of Corrections. *See* STATE OF VERMONT AGENCY OF HUMAN SERV. DEP'T OF CORR., OFFENDER GRIEVANCE SYS. FOR FIELD & FACILITIES, #320.01 (2007), *available at*, http://doc.vermont.gov/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/320.01.[2]

Relevant to this case, Root began the grievance process by "follow[ing] policy 103.4," presumably, the initial stage of the grievance process. (Doc. 5 at 2.) However,

---

[2] The Court takes judicial notice of the Vermont DOC's inmate grievance procedure as this procedure is generally known in this jurisdiction, the underlying facts are easily ascertainable, and it remains undisputed by either party. *See* Fed. R. Evid. 201(b), (d); *see also Christian v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (explaining it is appropriate for district courts to take judicial notice of state prison rules and regulations).

while awaiting a response from the DOC, Root prematurely filed a direct appeal to Commissioner Andrew Pallito, skipping several intermediate steps in the grievance process, including an appeal to the facility superintendent. (*Id.*) Root acknowledges in his Complaint that he filed his appeal while "still awaiting [an] appropriate answer within [the] allotted time" and makes no suggestion that anyone at the DOC thwarted his efforts to grieve the alleged incident. (*Id.*) As a result, Root circumvented the DOC's grievance process by failing to avail himself of all levels of existing administrative review. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (explaining that proper exhaustion under the PLRA requires an inmate to utilize each and every phase of administrative review offered by a prison facility).

The Second Circuit, however, has identified a narrow set of situations in which an inmate's failure to exhaust administrative remedies is excused. *Brownell v. Kim,* 446 F.3d 305, 312 (2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2004)). These situations arise,

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686).

With regard to this case, administrative remedies were clearly available to Root. In his sworn Complaint, Root checked "yes" in the box that asked the question whether

7

there "[is] a prisoner grievance procedure at this facility." (Doc. 5 at 2.) There is no indication that Defendant has waived the non-exhaustion defense or is estopped from raising it. In fact, Defendant timely moves to dismiss Root's Complaint specifically for the reason that he failed to exhaust all administrative remedies. (Doc. 9 at 7.) Lastly, Root has not made any allegation, and the Court finds no reason, that any "special circumstance" exists justifying his failure to comply the DOC's grievance process.

Root can continue to grieve this incident with the DOC by following their appropriate grievance rules; however, the PLRA bars Root from commencing suit in this Court until he properly exhausts all administrative remedies. Consequently, Defendant's motion to dismiss for failure meet the PLRA's exhaustion requirement should be GRANTED.

IV.  **Personal Involvement**

Defendant next moves to dismiss Root's claim against him because Plaintiff has not alleged that Defendant was personally involved in the alleged incident.

It is well settled in this circuit that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Similarly, a supervisor cannot be held liable for actions carried out by members of their staff under a theory of *respondeat superior* absent a showing that the supervisor "exhibited gross negligence or deliberate indifference to a high risk that [staff members] would violate [a plaintiff's] constitutional rights." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *see also Leonhard v. United States*, 633 F.2d

599, 621 n.30 (2d Cir. 1980) (supporting the proposition that *respondeat superior* is not recognized in a § 1983 action). Supervisors, however, are deemed personally responsible for actions carried out by members of their staff if they fail to make an effort to fix the misconduct after having notice of it, or if they generate a policy that condones such misconduct. *See Black*, 76 F.3d at 74; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Root's Complaint contains a detailed statement describing the facts that outline the basis for his § 1983 action. (Doc. 5 at 3.) Nowhere is there a reference to the personal involvement of Defendant, the Commissioner of Corrections, in the altercation which gives rise to this case. Also absent is any suggestion that Defendant's supervision of Officer Kerr demonstrated conduct rising to the level of gross negligence or deliberate indifference. Although the Complaint recites that Plaintiff directly appealed to Defendant, there is no allegation that the misconduct described in the Complaint continued once Defendant was put on notice. Accordingly, the motion to dismiss Root's claims against Defendant in his individual capacity should be GRANTED.

## V.     Eighth Amendment

Finally, Defendant argues that Officer Kerr's conduct did not constitute an Eighth Amendment violation because Officer Kerr merely applied *de minimus* physical force and that Root's injuries were insignificant.

The Eighth Amendment forbids prison officials from subjecting inmates to excessive force and causing the "unnecessary and wanton infliction of pain." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

9

(1976)). To prevail on an Eighth Amendment claim for excessive use of force, a plaintiff must satisfy a dual pronged test that includes both subjective and objective components. *See Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010); *see also Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). The subjective portion of an excessive force inquiry hinges on whether the action of a prison official was the product of "a good-faith effort to maintain or restore discipline, or [carried out] maliciously and sadistically." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). That is, the Court inquires into the prison official's "state of mind" to determine what the motivations were behind his actions. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

The objective portion of this inquiry, on the other hand, centers on the application of "contemporary standards of decency," to the alleged conduct, that is, the Court inquires whether the actions were "sufficiently serious by objective standards." *Griffin*, 193 F.3d at 91. Although the significance of the alleged injury is a factor in this assessment, "an inmate who complains of [conduct] that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); *see also Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights") (quoting *Johnson v. Glick*, 481, F.2d. 1028, 1033 (2d Cir. 1973)). Furthermore, a constitutional excessive force

violation "necessarily excludes…*de minimus* uses of physical force." *Hudson*, 503 U.S. at 9-10.

Root alleges that Officer Kerr punched and verbally berated him; that these actions caused him considerable physical and emotional pain; and that Officer Kerr did so unprovoked, entirely divorced from any effort to restore or maintain discipline. Such facts, viewed in a light most favorable to Plaintiff, satisfy the subjective prong of the excessive force inquiry. *See Boddie*, 105 F.3d at 861 ("[w]hen no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind").

Root's Eighth Amendment claim fails, however, to meet the objective prong of this analysis. The allegations made in Root's Complaint describe a single episode of abuse, including verbal harassment and a slamming of the fist to the chest without any significant injury resulting. (Doc. 5 at 3-4.) The exertion of such force is considered, by applicable case law, as *de minimus*, and is not enough to raise a valid Eighth Amendment claim. *See Boddie* 105 F.3d at 862 ("isolated episodes of harassment and touching . . . do not involve a harm of federal constitutional proportions"); *Black v. Cuomo,* No. 95-2678, 1996 WL 146507, at *1 (2d Cir. Apr. 1, 1996) ("verbal harassment, denial of haircuts, withholding of law library books for two days, late delivery of food and denial of a pen . . . are burdensome and annoying, not cruel and unusual "); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986) (claim that a prison guard called plaintiff names "did not allege any appreciable injury"); *Hofelich v. Ercole,* No. 06-13697, 2010 WL 184453, at *8

(S.D.N.Y. Jan. 11, 2010) ("Section 1983 was not designed to rectify harassment or verbal abuse") (internal citations omitted). Accordingly, I recommend that Defendant's motion to dismiss Plaintiff's Eighth Amendment claim be GRANTED.[3]

## VI. Leave to Amend

Dismissal of Plaintiff's Complaint with prejudice "would normally be proper." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam). The Court, however, should allow Plaintiff leave to amend his Complaint because "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal citations omitted) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) (stating "the court should freely give leave when justice so requires").

If Mr. Root chooses to submit an amended filing, the filing shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects. The Court should also require that the Amended Complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

---

[3] Even in the event these actions constituted a violation of Plaintiff's Eighth Amendment rights, immediate release from prison would not be an appropriate remedy. *See Gomez v. United States*, 899 F.2d 1124 (11th Cir. 1990) ("even if a prisoner proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release"); *see also McGlothlin v. Armor Corr. Health*, No. 3:07cv316/MCR/MD, 2007 WL 2376285 (N.D. Fla. 2007).

## **Conclusion**

For the reasons set forth above, I recommend that Defendant's motion to dismiss (Doc. 9.) be GRANTED and the case be DISMISSED without prejudice. I further recommend that, if this Report and Recommendation is adopted by the Court, Mr. Root be allowed thirty days to file an Amended Complaint. Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 2nd day of October, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).